IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

NATIONAL FIRE AND MARINE
INSURANCE COMPANY,

                Plaintiff,

Case No. 15-cv-910-DRH-DGW

vs.

LEE LINDEMANN, Special
Administrator of the Estate of
SUE ANN LINDEMANN, et al.,

                Defendant.

MEMORANDUM AND ORDER

**HERNDON, District Judge**:

## I. Introduction

Now before the Court is a motion to dismiss the crossclaim of defendant Midwest Emergency Department Services (hereinafter "MEDS") brought by plaintiff National Fire and Marine Insurance Company's (hereinafter "National Fire") (Doc. 87). MEDS opposes the motion (Doc. 97). For the following reasons, National Fire's motion is **DENIED**.

## II. Background[1]

This action arises out of a medical malpractice lawsuit filed in the Circuit Court of St, Clair County, Illinois (hereinafter "State Lawsuit"). *See Lindemann v. DuMontier, et al.*, No. 12-L-538. In the state lawsuit, Lee Lindemann, as special administrator of the Estate of Sue Ann Lindemann (hereinafter "Lindemann

---

[1] The Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the Crossclaim Plaintiff, in addition to examining other materials related to the exercise of jurisdiction. *Evers v. Astrue*, 536 F.3d 651, 656 (7th Cir.2008).

Estate"), alleged that Sue Ann Lindemann's death was the result of negligent treatment and care from Dr. Falconer at St. Elizabeth Hospital of the Sisters of the Third Order of St. Francis (hereinafter "St. Elizabeth Hospital"). MEDS, Erick Falconer, M.D., Western Healthcare, LLC, and St. Elizabeth Hospital were among the defendants to the lawsuit (Doc. 52-5).

MEDS entered a Full-Time Professional Services Agreement (hereinafter "Services Agreement") with St. Elizabeth Hospital under which it would provide healthcare staffing for the hospital. Subsequent to the Services Agreement, MEDS entered into a Client Staffing Services Independent Contractor Agreement (hereinafter "Contractor Agreement") with Western for the purpose of hiring independent contractor physicians to satisfy MEDS' obligations under the Services Agreement. (Doc. 52-3). The Contractor Agreement obligated Western to ensure that all independent contractors had malpractice insurance with minimum coverage "not less than $1 million per occurrence." (*Id.*).

Thereafter, Western entered into an Independent Contractor/Physician Agreement (hereinafter "Physician Agreement") with Dr. Falconer, who was to provide medical care to Western's clients, including St. Elizabeth's Hospital. Dr. Falconer then obtained the requisite malpractice insurance through National Fire. Pursuant to the contractual obligations, a Certificate of Liability Insurance was sent to St. Elizabeth's indicating that Dr. Falconer was insured while under contract with Western with policy limits "Per Loss Event $1,000,000; Physician Agg. $3,000,000." (Doc. 52-7). During the state court lawsuit, National Fire

undertook the defense of both Falconer and Western, pursuant to the policy (Doc. 1-2).

Subsequent to the underlying state lawsuit, National Fire filed the instant action in this Court seeking a declaratory judgment (Doc. 1). National Fire requested this Court to determine whether the terms of the liability insurance policy permitted National Fire to reduce its policy's liability limits by the costs of defending its insureds in the state lawsuit. National Fire named as defendants in this matter, the Lindemann Estate, the insureds (Western and Dr. Falconer), and the remaining defendants from the pending state lawsuit (Doc. 2).

Thereafter, on September 1, 2015, a settlement was announced in the state court (Doc. 89). On September 25, 2015, the Lindemann Estate executed a release in favor of all defendants, except National Fire. (Doc. 90). The release required National Fire to pay the Lindemann Estate the portion of the liability limits that remained outstanding after deducting National Fire's costs to defend its insureds. This was viewed as partial consideration for the release of its insureds. (*Id.*). The release also required National Fire to pay into this Court the disputed amount of the liability limits relating to its defense costs (Docs. 89 & 90). Per the release, only the Lindemann Estate or St. Elizabeth's Hospital would have the right to receive the disputed liability limit amount, if determined that the terms of the policy forbid National Fire from reducing the liability limits by its defense costs. (*Id.*).

Defendant-Crossclaim plaintiff MEDS filed its answer to National Fire's amended complaint (Doc. 68) and subsequently filed a Crossclaim for Declaratory Judgment against National Fire on October 23, 2015 (Doc. 69). MEDS' crossclaim alleges that it remains a third-party beneficiary to the insurance contract, given the inter-related nature of the contracts in play, and its contractual obligations under the liability insurance policy.

Thereafter, National Fire filed a motion to voluntarily dismiss its amended complaint for declaratory judgment against certain defendants (Doc. 86). That same day, National Fire filed the pending motion to dismiss MEDS crossclaim for lack of subject matter jurisdiction (Doc. 87). The Court granted National Fire's motion to dismiss certain defendants voluntarily on January 11, 2016, given the state court settlement and release of the state court defendants (Doc. 102). The Court now addresses National Fire's motion to dismiss for lack of jurisdiction the crossclaim of MEDS (Doc. 87).

### III. Motion to Dismiss

National Fire's motion to dismiss is made pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1), Rule 12(b)(1) provides that a case will be dismissed if the court lacks the authority to hear and decide the dispute. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). A court may look beyond the jurisdictional allegations of the complaint to consider any evidence submitted on the issue to determine if subject matter jurisdiction exists. *Id.*; *Hay v. Indiana State Bd. of Tax Commis.*, 312 F.3d 876, 879 (7th Cir. 2002) ("the district court

had not only the right, but the duty to look beyond the allegations of the complaint to determine that it had jurisdiction to hear the landowner's claim."). "A district court, in ruling upon an issue of subject matter jurisdiction, must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiffs", in this case the cross Claimant. *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 604 (7th Cir.2008) (citing *Capitol Leasing Co. v. Fed. Deposit Ins. Corp.*, 999 F.2d 188, 191 (7th Cir.1993)).

Article III of the United States Constitution limits the jurisdiction of federal courts to "cases" and "controversies." *Raines v. Byrd*, 521 U.S. 811, 818, 117 S.Ct. 2312, 2317, 138 L.Ed.2d 849 (1997). Whether an actual controversy exists under the Declaratory Judgment Act turns on whether there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *See* 28 U.S.C. § 2201. The "actual controversy" must exist not only "at the time the complaint is filed," but through "all stages" of the litigation. *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013); quoting *Alvarez v. Smith*, 558 U. S. 87, 92, 130 S. Ct. 576, 175 L. Ed. 2d 447 (2009).

For the purposes of Article III, when the issues presented no longer exist, or the parties no longer have a legal interest in the outcome, a case or controversy no longer exists, therefore the case is moot. *Already, LLC*, 133 S. Ct. at 723. The burden of proof is on the party asserting jurisdiction, in this case, the cross claimant. U*nited Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th

Cir.2003), *overruled on other grounds by Minn–Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir.2012) (en banc). With these principles in mind, the Court turns to the allegations of the motion.

### IV. Analysis

In its motion to dismiss, National Fire argues that MEDS no longer has a justiciable claim by virtue of the terms of the settlement of the state lawsuit (Doc. 87). National Fire argues that the settlement terminated MEDS' remaining legal interest regarding whether National Fire is permitted to reduce the liability limits by its defense costs under the terms of the insurance policy. MEDS, however, argues that it does have a legal interest in the interpretation of insurance contract and, in fact, an actual controversy still remains based on MEDS contractual obligations to St. Elizabeth's Hospital and MEDS continuing legal interest relating to the liability limits of the National Fire policy.

MEDS asserts that although the Lindemann Estate released MEDS from the state lawsuit under the terms of settlement, this did not extinguish MEDS legal interest. MEDS argues that pursuant to the Services Agreement, it contracted to provide physician services to St. Elizabeth's Hospital, and those contractual duties still remain. National Fire argues prior to the state court settlement, MEDS had a legal interest "that could potentially be affected by this Court's determination of whether National Fire's policy permitted its liability limits to be reduced by National Fire's cost of defense." (Doc. 88) However, National Fire argues that the settlement of the State Lawsuit "extinguished any legal interest

MEDS had in the outcome of whether National Fire may reduce the liability limits by its defense costs." (*Id*.)

The Services Agreement stated that:

> **Insurance.** Hospital shall not provide physicians or Midlevel Practitioners with professional malpractice insurance covering Physicians and Midlevel Practitioners. *[MEDS] shall procure such insurance with minimum limits of One Million Dollars ($1,000,000.00) per medical incident and Three Million Dollars ($3,000,000.00) in the annual aggregate, or such other limits as required by Hospital to comply with Hospital Sisters Health System's policy.* Such insurance shall cover Physicians and Midlevel Practitioners while Physicians and Midlevel Practitioners are providing services. [MEDS] shall be responsible to procure, and show proof of, reasonable levels of professional liability insurance applicable for acts (if any) that occurred prior to Physicians' and Midlevel Practitioners' engagement hereunder. Upon termination of this Agreement, regardless of the reason, if Physicians' and Midlevel Practitioners' insurance is other than occurrence-based, then *[MEDS]* shall procure continuing professional liability insurance in the amounts reasonably determined by Hospital covering Physicians' and Midlevel Practitioners' Services."

(emphasis added)(Doc. 52-1). The terms of said agreement with St. Elizabeth's Hospital, requires MEDS to abide by the hospital bylaws to provide insurance coverage for $1,000,000 per occurrence (*Id*.). MEDS argues that it has a direct interest in this outcome of this matter because of its contractual obligations to provide physician services to St. Elizabeth's with the requisite amount of insurance coverage. The outcome of National Fire's policy limit dispute potentially affects what actions MEDS may take in the future.

The factual basis for MEDS crossclaim against National Fire addresses National Fire's responsibilities and liabilities under the policy, and National Fire's attempt to utilize the declining balance policy provision. If determined that

National Fire is permitted to reduce its defense costs, MEDS argues that it will be obligated to pay the remaining difference under its contractual obligations to St. Elizabeth's Hospital. National Fire's failure to provide sufficient coverage would burden MEDS and make it liable for the remaining balance owed to St. Elizabeth's Hospital—a balance MEDS expected to be covered under the policy. Based on MEDS standing contractual obligations, MEDS has at least some arguable interest in the outcome of this action; thus, its claim is properly before this Court.

## V. Conclusion

For the reasons stated above, National Fire's motion to dismiss the crossclaim is **DENIED** (Doc. 87).

**IT IS SO ORDERED.**

Signed this 27th day of July, 2016.

Digitally signed by Judge David R. Herndon
Date: 2016.07.27 16:25:21 -05'00'

**United States District Judge**