IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

NATIONAL FIRE AND MARINE
INSURANCE COMPANY,

Plaintiff,

v.

LEE LINDEMANN, S*pecial Administrator of the
Estate of Sue Ann Lindeman*, and ST.
ELIZABETH'S HOSPITAL OF THE SISTERS
OF THE THIRD ORDER OF ST. FRANCIS,

Defendants;                                              Case No. 15-cv-910-DRH-DGW

And,

ST. ELIZABETH'S HOSPITAL OF THE
SISTERS OF THE THIRD ORDER OF ST.
FRANCIS,

Cross-Claimant

v.
ERICK FALCONER, MIDWEST EMERGENCY
DEPARTMENT SERVICE, INC., NATIONAL FIRE
AND MARINE INSURANCE COMPANY, and WESTERN
HEALTHCARE, LLC.

Cross-Defendants;

And,

MIDWEST EMERGENCY DEPARTMENT
SERVICE, INC.,

**Cross-Claimant,**

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

Pending before the Court is St. Elizabeth's Hospital of the Sisters of the Third Order of St. Francis's ("St. Elizabeth's") appeal of the Magistrate Judge's Order (Doc. 123). Specifically, St. Elizabeth's appeals Magistrate Judge Wilkerson's ruling memorialized in the Order entered on December 19, 2016, regarding a discovery dispute between St. Elizabeth's and National Fire and Marine Insurance Company ("National Fire").[1] Plaintiff has responded in opposition (Doc. 128). For the reasons stated below, the Court respectfully disagrees with the Magistrate Judge's ruling and finds that the claim file and underwriting file are relevant and discoverable. Accordingly, the Court **GRANTS** St. Elizabeth's appeal and **REVERSES** Magistrate Judge Wilkerson's Order (Docs. 123).

## I. Background[2]

This action arises out of a medical malpractice lawsuit filed in the Circuit Court of St, Clair County, Illinois. *See Lindemann v. DuMontier, et al.*, No. 12-L-538. In the state lawsuit, Lee Lindemann, as special administrator of the Estate of Sue Ann Lindemann ("Lindemann Estate"), alleged that Sue Ann Lindemann's

---

[1] Defendant Lee Lindemann, Special Administrator of the Estate of Sue Ann Lindemann, deceased, also moved to adopt St. Elizabeth's appeal of the magistrate judge's December 19, 2016, Order (Doc.130), which the Court granted (Doc. 139).

[2] The Court herein incorporates the facts previously set forth in the magistrate judge's Order, in addition to those facts applicable to the pending appeal (Doc. 122).

death was the result of negligent treatment and care from Dr. Falconer at St. Elizabeth's.

During the relevant time period, Dr. Falconer was an independent contractor who was hired by Western Healthcare, LLC ("Western"), a healthcare staffing company, who in turn was retained by Midwest Emergency Department Services ("MEDS"), to staff medical positions at St. Elizabeth's. A Full Time Professional Services Agreement ("PSA") was entered into by the Hospital and MEDS applicable to Dr. Falconer.

According to the cross-claim filed by the St. Elizabeth's, the PSA required MEDS to provide malpractice insurance to its employees, principally Dr. Falconer, in the amount of $1 million "per medical incident" and $3 million "in the annual aggregate" (Doc. 52). To that end, Dr. Falconer was insured under a Medical Professional Liability Policy ("malpractice policy"), underwritten by National Fire, who defended Dr. Falconer and Western in the state court action.

In this Court, National Fire seeks a declaration as to the terms of the malpractice policy. National Fire alleges that the policy included "eroding" or "declining" liability coverage where the policy limits are reduced by litigation costs. The underlying state court action has settled, and the cost of defense was $400,000. Thus, there is a dispute as to whether the $1 million "per medical incident" outlined in the malpractice policy is in reality only $600,000 in payable damages.

St. Elizabeth's later filed cross-claims against National Fire, MEDS, Western, and Dr. Falconer for declaratory relief. In making its allegations, St. Elizabeth's seeks a declaratory judgment that National Fire is estopped from contending that the National Fire Policy is a "declining balance" policy (Doc. 52). In support of these assertions, St. Elizabeth's highlights that National Fire, by and through counsel for Dr. Falconer and Western, repeatedly asserted throughout the state court action, that the policy limits at issue were $1 million, and they failed to disclose that the policy was purportedly being reduced by the costs of the state court defense until the eve of trial (Doc. 123). St. Elizabeth's further argues that National Fire is estopped from asserting that the malpractice policy includes eroding liability coverage, in light of the production of a Certificate of Liability Insurance, which made no such representation, and those aforementioned discovery responses in the underlying state court action.

Currently pending is a discovery dispute between St. Elizabeth's and National Fire. On May 27, 2016, St. Elizabeth's filed a motion to compel, in which it requested that National Fire immediately produce the underwriting file with respect to the insurance policy at issue, and the claim file pertaining to the state court action (Doc. 106). National Fire objected to the motion (Doc. 107). The magistrate judge later denied the motion to compel without prejudice holding that because no finding had been made declaring that the insurance policy at issue was ambiguous, "neither the claims file nor the underwriting file appear relevant

to this contract dispute" (Doc. 122). Thereafter, St. Elizabeth's appealed the Order to this Court (Doc. 123). National Fire opposes the appeal (Doc. 128).

## II. Law

A district court may modify or reverse a decision of a magistrate judge on a nondispositive issue upon a showing that the magistrate judge's decision is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); SDIL-LR 73.1(a).. Accordingly, the Court will affirm Magistrate Judge Wilkerson's decision unless his factual findings are clearly erroneous or his legal conclusions are contrary to law. *Id*. A finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364 395 (1948)); See also *Weeks v. Samsung Heavy Industries Co. Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997) ("The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made.").

## III. Discussion

In its appeal, St. Elizabeth's argues that the underwriting file and claim file at issue are directly relevant to its claim for estoppel and to "numerous issues in this proceeding, including, but not limited to, National Fire's knowledge of the state court action, its acknowledgement that its policy pertained to the claim, its confirmation of coverage and coverage amounts, its decision not to fully and

timely disclose the nature of the policy issues to its insured, and its communications with various individuals and entities regarding same, all of which resulted in the continuing misrepresentation throughout the *Lindemann* proceeding of the purported policy limits." (Doc. 123, pg. 3). St. Elizabeth's argues, more specifically, that the underwriting file and claim file are directly relevant to the hospital's request for a declaration that National Fire is estopped from contending the policy limits at issue are reduced by the state court litigation costs.

As a federal court sitting in diversity, we apply state law to substantive issues and federal law to procedural and evidentiary matters. *Sewerage Dist. v. Am. Int'l Specialty Lines Ins. Co.*, 598 F.3d 311, 316 (7th Cir. 2010) citing *Bevolo v. Carter*, 447 F.3d 979, 982 (7th Cir.2006). Thus, St. Elizabeth's is correct that Illinois law is controlling with respect to the estoppel issues presented in this case.

Both St. Elizabeth's and Lee Lindemann cite *Harwell v. Fireman's Fund Ins. Co. of Ohio*, 2016 IL App (1st) 152036, as modified on denial of reh'g, (Aug. 2, 2016), where the Illinois Appellate Court held that the doctrine of estoppel attaches when an insurance company withholds information from, or misleads, the insured party, as support for the pending appeal. In *Harwell*, the plaintiff, a service technician injured on a jobsite, filed suit against the general contractor of the site, who was insured by Fireman's Fund Insurance Co. The insurance policy included an endorsement requiring the general contractor to obtain certificates of

insurance and hold harmless agreements from all subcontractors. If he "failed to do so, then "at the time of an 'occurrence' involving a subcontractor," Fireman's Fund would pay a maximum of $50,000 for all damages and defense costs due to any "bodily injury" "arising out of any covered acts" of the subcontractor." Id., at ¶ 4.

Similar to the facts in this case, Fireman's Fund represented to Harwell in the answer to interrogatories that the general contractor's insurance policy had a liability limit of $1 million. Afterwards, Fireman's Fund changed its position on the liability limit but did not tell Harwell, who was relying on those representations. In reversing the trial court's order, the Appellate Court held that estoppel precluded Fireman's Fund from asserting the reduction in the policy limits, based on its failure to disclose that said position in its answers to interrogatories. The Appellate Court elaborated further finding that:

> "Estoppel is a defensive action that will "prevent a party's disavowal of previous conduct if such repudiation would not be responsive to the demands of justice and good conscience." (Internal quotation marks omitted.) N*ationwide Mutual Insurance Co. v. Filos*, 285 Ill.App.3d 528, 533, 220 Ill.Dec. 678, 673 N.E.2d 1099 (1996). More specifically, it "prevents the assertion of a contractual condition by a party who, through words or conduct, has fostered the impression that the condition will not be asserted as a legal defense." *Id*. A party claiming the benefit of an estoppel must show reasonable reliance on the acts of the other party, without "knowledge or convenient means" of learning the truth. *National Ben Franklin Insurance Co. v. Davidovitch*, 123 Ill.App.3d 88, 93, 78 Ill.Dec. 577, 462 N.E.2d 696 (1984). The reliance must have resulted in prejudice or detriment. *Id*. Here, Fireman's Fund represented to Harwell in the answer to interrogatories that Kipling's insurance policy had a liability limit of $1 million. Afterwards, Fireman's Fund changed its position on the liability limit but did not tell Harwell, who was relying on Fireman's Fund's truthful representations while it was handling

> Kipling's defense. Harwell relied on this to his detriment and Fireman's Fund is now preventing him from collecting his damages.
>
> Typically, this doctrine of estoppel attaches when an insurance company withholds information from, or misleads, the insured party. *See, e.g., RLI Insurance Co. v. Illinois National Insurance Co.*, 335 Ill.App.3d 633, 645, 269 Ill.Dec. 524, 781 N.E.2d 321 (2002). Here, Kipling was the insured and Farmer's Fund informed Kipling early on about the endorsement's effect on the liability limit. But Kipling went out of business at some point in the litigation and in any event seemed to play no role in either suit. It was Harwell who needed to know about the endorsement and the liability limit to make informed decisions about the litigation, and Harwell to whom Kipling's attorneys—the ones paid for by Fireman's Fund—owed a duty to supplement the interrogatory under supreme court rules. Broad principles of equity—the desire to prevent fraud and injustice—dictate that Fireman's Fund should not benefit from its attempted ruse."

*Harwell*, 2016 IL App (1st) 152036, ¶¶ 16&17.

Upon review of the record and applying *Harwell* to the facts of this case, the Court finds that an arguable claim of estoppel has been presented, and thus the underwriting file and claim file are, in fact, relevant to matters currently in dispute, as alleged by St. Elizabeth's. Under Fed. R. Civ. P. (26)(b)(1), "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Specifically, the underwriting and claim files are relevant to issues in this case, including but not limited to, National Fire's knowledge of contractually-imposed coverage obligations, knowledge of the state court action, its acknowledgement that its policy pertained to the claim, and its confirmation of coverage and coverage amounts. Thus, following a review of the facts and applicable law, the Court

respectfully disagrees with the Magistrate Judge's ruling and finds that the claim file and underwriting file are both relevant and discoverable.

IV. **Conclusion**

With the understanding that not all discoverable evidence will necessarily be deemed admissible, *see* Fed. R. Civ. P. 26(b)(1), the Court **GRANTS** petitioner's appeal and **REVERSES** Magistrate Judge Wilkerson's ruling (Doc. 122). The Court **DIRECTS** National Fire to immediately produce the underwriting file and the claim file that were originally requested in St Elizabeth's Requests for Production Nos. 1 and 2.

**IT IS SO ORDERED.**

Digitally signed by Judge David R. Herndon
Date: 2017.09.27 12:08:40 -05'00'

**United States District Court Judge**