IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

NATIONAL FIRE AND MARINE
INSURANCE COMPANY,

Plaintiff,

v.

LEE LINDEMANN, Special
Administrator of the Estate of Sue
Ann Lindemann, and ST.
ELIZABETH'S HOSPITAL OF THE
SISTERS OF THE THIRD ORDER OF
ST. FRANCIS,

Defendants;

And,

ST. ELIZABETH'S HOSPITAL OF THE
SISTERS OF THE THIRD ORDER OF
ST. FRANCIS,

Cross-Claimant

v.

ERICK FALCONER, MIDWEST
EMERGENCY DEPARTMENT
SERVICE, INC., NATIONAL FIRE AND
MARINE INSURANCE COMPANY, and
WESTERN HEALTHCARE, LLC.

Cross-Defendants;

And,

MIDWEST EMERGENCY
DEPARTMENT SERVICE, INC.,

Cross-Claimant.

No. 15-cv-910-DRH-DGW

**MEMORANDUM and ORDER**

**HERNDON, District Judge:**

## I. Introduction

Pending before the Court are two motions: a Motion for Summary Judgment (Doc. 169) submitted by Defendant-Crossclaim Plaintiff, St. Elizabeth's Hospital of the Hospital Sisters of the Third Order of St. Francis ("St. Elizabeth's"), on March 23, 2018 and an Appeal of Magistrate Judge Wilkerson's May 8, 2018 Order Denying Motion for Leave to a File Second Amended Complaint (Doc. 179) submitted by Plaintiff, National Fire and Marine Insurance Company ("National"), on May 22, 2018. National offered on May 22, 2018, a response in opposition of St. Elizabeth's Motion for Summary Judgment. (Doc. 180). St. Elizabeth's offered on June 5, 2018, a response in opposition of National's Appeal of Magistrate Judge Wilkerson's May 8, 2018 Order. (Doc. 184). For the reasons set forth below, the Court **GRANTS** St. Elizabeth's Motion for Summary Judgment and **AFFIRMS** Magistrate Judge Wilkerson's May 8, 2018 Order.

## II. Background

The instant matter, a declaratory judgment action, arises out of an underlying cause of action predicated on the Illinois Wrongful Death Act which

was filed by Lee Lindemann, Special Administrator of the Estate of Sue Ann Lindemann, in the Twentieth Judicial Circuit, St. Clair County, Illinois in 2012.[1] National filed this action (Doc. 1) seeking a declaration that its policy of liability insurance ("the Policy") issued to two defendants in the underlying action, Erick Falconer, M.D. and Western Healthcare, LLC ("Western"), is a "declining balance" policy, and that defense costs incurred with the *Lindemann* matter have reduced the limits of liability afforded to the aforementioned insureds.

On March 23, 2018, St. Elizabeth's filed a Motion for Summary Judgment with respect to its Crossclaim (Doc. 52, p. 15) seeking to estop National from imposing the declining balance provision of its insurance policy at issue. (Doc. 170). St. Elizabeth's contends that National, by and through counsel for Dr. Falconer and Western Healthcare, repeatedly asserted throughout the *Lindemann* proceeding that the policy limits at issue were $1 million, and did not disclose that the policy was allegedly being reduced by the costs of defense until the "eve of trial." (Doc 170, p. 5). On or about May 13, 2013, Dr. Falconer answered the Lindemann Estate's interrogatories and responded that he was insured under National's policy number 92RKB102301 with applicable "[l]imits of liability [of] $1 million per event and $3 million in the aggregate for each physician." *Id.* – Exhibit C. Approximately one year later, Western Healthcare answered the Lindemann Estate's interrogatories and stated that it was insured under the above-mentioned policy of insurance with liability limits of $1 million per event

---

[1] *Lee Lindemann, Special Administrator of the Estate of Sue Ann Lindemann v. Charles Dumontier, M.D.*, et al., St. Clair County Case No.: 12-L-528.

and $3 million in the aggregate for each physician. *Id.* – Exhibit F. On June 1, 2015, Dr. Falconer filed his Supplemental Response to Request to Produce, wherein he served upon the parties '[a] copy of the Western Healthcare Policy under which Dr. Falconer is being defended." *Id.* – Exhibit H.

On May 22, 2018, National filed a Response in Opposition to St. Elizabeth's Motion for Summary Judgment (Doc. 180) contending that St. Elizabeth's motion is a "transparent attempt to avoid the clear language of the policy that provides that the policy limits are eroded by both indemnity payments and claims expense." *Id.* at 1. Additionally, National argues that it was not a party to the underlying *Lindemann* proceeding and did not participate in any manner in drafting the discovery responses. St. Elizabeth's now seeks to estop National "based upon the failure of the insured's defense counsel to initially disclose the defense within limits provision of the policy, merely because National hired the defense counsel." *Id.* at 1-2.

### III. Applicable Law
### IV.

**A. Standard of Review – Summary Judgment**

Summary judgment is appropriate only if the admissible evidence considered as a whole shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) (citing Fed. R. Civ. P. 56(a)). The party seeking summary judgment bears the initial burden of demonstrating –

based on the pleadings, affidavits and/or information obtained via discovery – the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Bunn v. Khoury Enterpr. Inc.*, 753 F.3d 676 (7th Cir. 2014).

In assessing a summary judgment motion, the district court normally views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012); *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011); *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014). If genuine doubts remain and a reasonable fact finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enter., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989). If it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003).

Further, a failure to prove one essential element necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 323.

B.     **Standard of Review – Appeal of Magistrate Decision**

Local Rule 73.1(a) addresses matters pertaining to the appeal of a magistrate judge's decision on non-dispositive matters[2] and provides as follows:

Appeal of Non-Dispositive Matters - 28 U.S.C. § 636(b)(1)(A)

> Any party may appeal a Magistrate Judge's order determining a motion or matter within 14 days after issuance of the Magistrate Judge's order, unless a different time is prescribed by the Magistrate Judge or a District Judge. The party shall file with the Clerk of Court and serve on all parties a written request for an appeal which shall specifically designate the order or part of the order that the parties wish the Court to reconsider. A District Judge shall reconsider the matter and shall set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law. A District Judge may also reconsider *sua sponte* any matter determined by a Magistrate Judge under this rule.

IL R USDCT SD LR 73.1(a).

Also, under FEDERAL RULE OF CIVIL PROCEDURE 72(a), the Court may modify or reverse a decision of a magistrate judge on a non-dispositive issue upon a showing that the magistrate judge's decision is "clearly erroneous or contrary to the law." A finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (*quoting United States v. United States Gypsum Co.*, 333

---

[2] In general, motions for leave to amend pleadings, and orders thereon, are non-dispositive within the meaning of Rule 72(a). *See Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 595 (7th Cir.2006).

U.S. 364 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)); *See also Weeks v. Samsung Heavy Industries Co. Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997) ("The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made.").

## V. <u>Analysis</u>

### A.   Estoppel

St. Elizabeth's contends that, as a matter of law, National should be estopped from imposing the declining balance provision of the Policy because National, by and through counsel for Dr. Falconer and Western Healthcare, repeatedly asserted throughout the *Lindemann* proceeding that the policy limits at issue were $1 million.

In *Milwaukee Metro. Sewerage Dist. v. Am. Int'l Specialty Lines Ins. Co.*, the court held that a federal court sitting in diversity must apply state law to substantive issues and federal law to procedural and evidentiary matters. 598 F.3d 311 (7th Cir. 2010). Under Illinois Law, to "establish estoppel in an insurance context, the insured must show: (1) that he was misled by the acts or statements of the insurer or its agent; (2) reliance by the insured on those representations; (3) that such reliance was reasonable; and, (4) detriment or prejudice suffered by the insured based on the reliance. *Chatham Corp. v. Dann*

*Ins.*, 351 Ill. App. 3d 353, 366–67 (1st Dist. 2004) (quoting *Dumenric v. Union Oil Co. of California*, 238 Ill. App. 3d 208, 213 (1st Dist. 1992)). The First District noted further that "[i]t is not necessary that the insurer intended to mislead the insured in order for the estoppel to apply." *Id.* at 367. In *Harwell v. Fireman's Fund Ins. Co. of Ohio*, the court demonstrated that a claim of estoppel asserted against an insurer is not limited to a claim brought by an insured, but may be asserted by another party against an insurer as a result of conduct in the course of litigation. 2016 IL App (1st) 152036. Therefore, the Court first looks to whether National or its agents misled St. Elizabeth's by its acts or statements.

1. **Misled**

St. Elizabeth's has sufficiently demonstrated that it was misled by the acts or misstatements by National or its agents. In *Harwell*, the plaintiff, a service technician injured on the jobsite, filed suit against the general contractor of the site. *Id.* at ¶ 3. The general contractor was insured by the Fireman's Fund, Inc. ("Fireman's Fund"). *Id.* Fireman's Fund retained counsel to defend the general contractor, and during the course of discovery said counsel filed an answer to plaintiff's interrogatories disclosing that the defendant was insured by Fireman's Fund, and that "the maximum liability limit under the policy was $1 million." *Id.* ¶¶ 1, 3. After the defendant answered the interrogatory, Fireman's fund notified the defendant that the limits of the liability of the policy were reduced from $1 million to $50,000, and the reduced limits were inclusive of defensive costs. *Id.* at

¶ 3. The court held that estoppel precludes an insurer from asserting a reduction in liability limits where the insurer fails to disclose such a position through the course of litigation and misrepresents that the insured is covered by the full liability limits of the policy. *Id.* at ¶¶ 16-17.

Here, like in *Harwell*, National's agents misrepresented the limits of liability in discovery by providing written discovery requests in 2013 that asserted that the policy limits at issue were $1 million per event and $3 million in the aggregate for each physician. It was not until June 2015, two years after the aforementioned discovery responses, that Dr. Falconer filed his supplemental responses which indicated the Policy did not afford liability limits of $1 million per incident, but instead contained a declining balance provision which provided that defense costs eroded the limits of liability available. Specifically, as asserted in St. Elizabeth's Motion for Summary Judgment:

> [I]n over two years spent defending Dr. Falconer and Western Healthcare, approximately $400,000 of the $1 million of purported coverage had been eliminated. Thus, as the parties approached the trial on this matter, they learned, for the first time, that Dr. Falconer, whose tortious conduct was central to plaintiff's claims, did not have $1 million of coverage, but instead $600,000 in coverage, which was being further eroded on an almost daily basis.

(Doc. 170, p. 6).

National contends that it did not mislead St. Elizabeth's because:

> [T]he written discovery responses on which St. Elizabeth bases its claim for estoppel were not drafted or served on behalf of National. Pursuant to its duty to defend under the Policy, National retained separate legal counsel, who filed appearances in the Malpractice Action on behalf of Falconer and Western – not National. Falconer

> and Western's respective counsel prepared and served discovery responses which were verified by Falconer and Wester – not National.

(Doc. 180, p. 9).

The Court disagrees with the latter contention because Mr. Meierant, as an agent of National, retained counsel on behalf of National to represent its insured. National further argues that St. Elizabeth's was not misled because the discovery responses served by Dr. Falconer and Western did not misrepresent the policy's liability limits. Specifically, National contends that the interrogatories only asked for the *maximum* liability policy limits which Dr. Falconer truthfully provided. The holding in *Harwell* rejects this argument, because National's attempt to reduce the limits of liability qualified as "additional information" that was required to be disclosed. *See Harwell*, 2016 IL App (1st) 152036, ¶ 13 (holding that "[n]or does it help to argue that Fireman's Fund answered the interrogatory accurately because the original policy did have a limit of $1 million; the asserted limit of $50,000 qualified as 'additional' information that Fireman's Fund should have disclosed . . ."). Therefore, the record indicates that St. Elizabeth's has demonstrated that it was misled by the acts or misstatements by National or its agents. The Court now turns to whether St. Elizabeth's reasonably relied on National's misrepresentations.

2. **Reasonable Reliance**

St. Elizabeth's has sufficiently demonstrated that it reasonably relied on National's material misstatements of the Policy's limits. St. Elizabeth contends that it reasonably relied on National's representations because:

> Since the representations of counsel retained by National Fire were made in the form of sworn answers to interrogatories, the parties in the Lindemann action were justified in relying on said representations. Moreover, said parties' reliance was justified because contractual obligations required physicians rendering care at St. Elizabeth's Hospital to be insured with <u>minimum</u> policy limits of $1 million per occurrence.

(Doc. 170, p. 15).

National argues that it was not reasonable for St. Elizabeth's to rely solely on the interrogatory answers, because St. Elizabeth's "had tools at its disposal to object to the insureds' response to the request for production seeking a copy of the Policy. St. Elizabeth' could have made a demand pursuant to Rule 201(k) to Falconer and/or Western to amend the response and provide a copy of the Policy . . . ." (Doc. 180, p. 15). In *Hubble v. O'Connor*, the court held that a "party claiming the benefit of an estoppel cannot shut his eyes to obvious facts, or neglect to seek information that is easily accessible, and then charge his ignorance to others." 291 Ill. App. 3d 974, 987 (1st Dist. 1997). Here, the record indicates that St. Elizabeth's and the other parties did not neglect to seek information related to the Policy. The Lindemann Estate's Request for Production sought production of any insurance policies at issue and Dr. Falconer responded by referring to the foregoing answer to interrogatory 9. (Doc. 170 – Exhibit D). Similarly, St.

Elizabeth's inquired as to the "limits of liability under the policies" applicable to Dr. Falconer and, in his May 13, 2013 Answers, Dr. Falconer responded by referring to his answer to interrogatory 9. *Id.* – Exhibit E. National cannot now argue that St. Elizabeth's and the other parties neglected to seek information relevant to the Policy. Therefore, the Court finds that St. Elizabeth's reasonably relied on National's misstatements because the statements were made in the course of discovery and were consistent with the contractual obligations of National's insureds. The Court now turns to whether St. Elizabeth's relied on National's misrepresentations to their detriment.

3. **Detrimental**

St. Elizabeth's has sufficiently demonstrated that it relied on National's misrepresentations to its detriment. In *Harwell*, the Court noted that "[t]he impact of [the insurer's misrepresentations regarding the policy] is obvious: had [the plaintiff] known in 2008 that Fireman's Fund was limiting its liability to only $50,000, he could have sought settlement with [the defendant] or changed trial strategy." *Harwell*, 2016 IL App (1st) 152036, ¶ 13. Here, as previously discussed, National made misrepresentations for over two years regarding the Policy. Similar to *Harwell*, it is reasonable to believe that had St. Elizabeth's and the parties known that National would seek to reduce the limitations of the Policy, settlement could have been sought at an earlier juncture, or the parties could have changed their litigation strategy.

National argues that "St. Elizabeth's claim that it relied on the Policy's liability limits disclosed in the insureds' discovery responses to its detriment in formulating its ligation strategy, is completely speculative and unsupported by any factual evidence." (Doc. 180, pp. 12-13). The Court disagrees with the above contention because, like in *Harwell*, it is reasonable to believe that the parties would have changed their litigation strategies if they knew National would seek to reduce the Policy's limits from $1 million to $600,000. Therefore, the Court finds that St. Elizabeth's has sufficiently demonstrated that it reasonably relied on National's misrepresentations to its detriment, and thus, as matter of law, National is estopped from imposing the Policy's declining balance provision which would reduce the Policy's limits from $1 million to $600,000.

**B.     Appeal of Magistrate Judge Decision**

In its May 22, 2013 Appeal of Magistrate Judge Wilkerson's Order ("the Order") (Doc. 178) denying National's motion for leave to file a second amended complaint, National contends that the Order's findings are clearly erroneous because National has "demonstrated good cause to amend its complaint based upon events that occurred subsequent to the original deadline for freely amending the Complaint, March 1, 2016." (Doc. 179, p. 1). In its June 5, 2018 response in opposition to National's appeal, St. Elizabeth's contends that said motion was properly denied because National failed to demonstrate good cause for the amendment. (Doc. 184, p. 2).

To support its Appeal, National presents two arguments: (1) National has shown good cause for extending the deadline to amend its pleadings; and (2) National timely filed the motion to amend. As to its first argument, National contends that "recent rulings in this case constitute good cause for granting National Fire's Motion to Amend. Because these rulings occurred after the deadline to amend the complaint." (Doc. 179, p. 3). Specifically, National argues that the Court's October 10, 2017 Order denying National's motion to vacate the Court's order that the Clerk of the Court pay the Lindemann Estate $400,000 changed the nature of the case and National's recovery strategy, which constitutes good cause for the amendment. *See Vitelo v. Brazzaz, LLC*, No. 09 C 01051, 2010 WL 3273898, at *4 (N.D. Ill. Aug. 16, 2010) (finding "good cause" to amend where plaintiff sought to add additional defendant as an "additional source of indemnity"). St. Elizabeth's argues that National "failed to demonstrate good cause for the filing of its proposed amendment where it waited more than four months to amend its Complaint after [the Court] ordered that the escrowed funds be released to the Lindemann Estate." (Doc. 184, p. 8). Additionally, St. Elizabeth's contends that:

> National Fire's proposed Amendment is futile because the counts it seeks to introduce, *i.e.*, Count II (attempting to state a cause of action on a purported assignment) and Count III (purporting to state a cause of action for equitable subrogation) fail to state a claim. Significantly, both counts are premised on an event that has not transpired, to wit: whether National Fire may enforce the purported "declining balance" component of the insurance policy at issue. Said counts are further premised on another event that has not transpired, namely: St. Elizabeth's Hospital's failure to tender the sum of $400,000 in the event National Fire prevails. Thus, both of

> the foregoing counts are predicated on multiple layers of possible future events. The speculative nature of the relief sought by National Fire renders said Counts II and III subject to dismissal for failure to state a claim

*Id.* at 3.

The Seventh Circuit has held that "the decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008). Also, under FEDERAL RULE OF CIVIL PROCEDURE 72(a), the Court may modify or reverse a decision of a magistrate judge on a non-dispositive issue upon a showing that the magistrate judge's decision is "clearly erroneous or contrary to the law." Here, Magistrate Judge Wilkerson found compelling both parties' argument, but decided that National did not demonstrate that good cause exists for extending the deadline to amend pleading. Therefore, based on the record and applicable law, Magistrate Judge Wilkerson's decision is not clearly erroneous or contrary to the law, and thus, the Order is affirmed.

## VI. Conclusion

In sum, the Court concludes that St. Elizabeth's has made a sufficient showing of the essential elements for its claim for estoppel. The Court believes that summary judgment is appropriate here because the record supports such a finding. Additionally, the Court concludes that National has failed to make a sufficient showing that Magistrate Judge Wilkerson's findings are clearly erroneous.

Accordingly, the Court finds that there are no genuine issues of material fact and **GRANTS** St. Elizabeth's Motion for Summary Judgment. National's is estopped from asserting coverage in this matter in any respect inconsistent with this order, therefore National's declaratory judgment action is **DISMISSED**, **WITH PREJUDICE**. Additionally, for the reasons set forth herein, National's Objection to, or Appeal From, Magistrate's Order of May 8, 2018 is hereby **DENIED**, the May 8, 2018 Order is therefore **AFFIRMED**. The Court's order herein moots all other claims, counter-claims and cross claims. Clerk to enter judgment dismissing National's complaint for declaratory judgment and all ancillary claims herein.

**IT IS SO ORDERED.**

Judge Herndon
2018.10.15
08:52:04 -05'00'

**United States District Judge**